UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 06-CV-267-GFVT

JOHN F. BROCK                                                          PETITIONER

## MEMORANDUM OPINION AND ORDER

UNITED STATES DEPARTMENT OF
JUSTICE, ET AL.                                                RESPONDENTS

John F. Brock, an individual presently confined at the United States Prison-Big Sandy ("USP-Big Sandy"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. He has paid the $5.00 filing fee.

This matter is before the Court for screening.  28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970); *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner.  *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).  However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action:  (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

<u>RESPONDENT</u>

The named respondents are:  (1) the United States Department of Justice; (2) the Bureau of Prisons ("BOP"); (3) K. M. White, Regional Director of the BOP; and (4) Suzanne Hastings, Warden of USP-Big Sandy.

As the petitioner asserts a claim under §2241, the proper respondent would be his custodian, Suzanne Hastings, the warden of USP-Big Sandy.

<u>CLAIMS</u>

The petitioner began serving his 24-month sentence for fraud and money-laundering on December 28, 2005.[1]  He claims that the respondent is violating his due process rights under the Fifth Amendment of the United States Constitution by refusing to consider him for placement in a Community Corrections Center ("CCC") until July 23, 2007, just two months before his actual release date.

<u>ALLEGATIONS OF THE PETITION</u>

As an initial matter, the Court notes that although the petitioner has supplied the Court with copies of his three appeals within the BOP's Administrative Remedy process, 28 C.F. R. 542.14-15, he did not supply the Court with the copies of the BOP's written denials of his appeals.  Ordinarily, the Court would enter a deficiency order requiring a prisoner to provide it with the BOP's *responses* so that it would have a full and complete perspective of the BOP's position.  Unlike some prisoner-petitioners, however, Brock has noted his extensive educational

---

[1]     Petitioner states that he was convicted of these offenses in the United States District Court for the Southern District of Ohio in Cincinnati.

2

credentials and has adequately set forth the administrative history of his claims.  The Court is able to address the merits of the claim.

The petitioner states that he holds a Bachelor of Science Degree and spent the last 20 years prior to his incarceration applying, managing and/or directing information technology.  He states that prior to his conviction, he was most recently Director of Information Technology for a Fortune 500 multi-national corporation.  He alleges that he has acquired career-related certifications such as Cisco Certified Internetwork Engineer (CCIE), Certified Networking Engineer (CNE), and Microsoft Certified Systems Engineer (MCSE).  He alleges that because information technology is a dynamic field, certifications are usually updated annually or they expire.  Petitioner alleges that due to his incarceration, all of his computer certifications have expired.

Petitioner states that according to BOP Program Statement 5325.06, inmates with 30 months or less remaining to serve should be enrolled in Release Preparation Program ("RPP").  Petitioner states that because he was only sentenced to a 24-month term, he was therefore immediately eligible to be enrolled in the institution's RPP program when he arrived at USP-Big Sandy.  Petitioner claims that the institution's RPP program is totally inadequate to meet his re-entry or rehabilitation needs.

Essentially, he argues that the RPP assists only those inmates who have had little or not educational background and provides only the most basic skills and training for release into society.  He alleges his professional background renders the RPP at Big Sandy useless to him.  Specifically, he argues:

3

> Since the Petitioner has been married for more than twenty years, has two well adjusted daughters including one teenager, was gainfully employed and head of household for all of that time, has lived in the same house for more than ten years, owns an automobile, has excellent credit, and above average good health, he reasoned that a more effective RPP would be one which assisted him to obtain gainful employment at the earliest possible date after his release.  This means enrolling in continuing education classes which would allow him to recertify and make him employable according to his professional dictates.

[Petitioner's Memorandum, p. 4, Record No.  22]

The petitioner cites various cases in support of his claim that the BOP is unable to provide him with adequate pre-release preparation, including but not limited to *Goldings v. Winn*, 383 F.3d 17 (1ˢᵗ Cir. 2004) and  *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir.2004).  It appears that Brock seeks a full 180 days in CCC placement and objects to being denied CCC placement until July, 2007.  He further contends that this denial will cause him irreparable damage and that he is entitled to emergency injunctive relief.

<u>RELIEF REQUESTED</u>

The petitioner seeks emergency injunctive relief in the form of an order directing the respondent to place him in a CCC immediately, where he can maintain his computer accreditation/certification**.**

<u>DISCUSSION</u>
1.  <u>Change in BOP Policy</u>

Prior to December 20, 2002, under its old interpretation of 18 U.S.C. §3624(c), the BOP uniformly placed federal inmates in CCC's for the last 180 days (six months) of their sentences, even if that placement exceeded the last ten percent of their sentences.  This  was known as the "Six Month Policy."

4

On December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum ("the OLC Memo") declaring that the Six Month Policy was "unlawful." The OLC Memo concluded that the BOP could not designate a CCC as a place of confinement pursuant to 18 U.S.C. §3621, because a CCC is not a "penal or correctional facility" within the meaning of the statute.   The OLC Memo stated a change in the BOP's longstanding interpretation of 18 U.S.C. §3624(c) and its previous policy regarding inmates' placement in CCC's.

On December 20, 2002, the BOP's General Counsel issued a "Memorandum for Chief Executive Officers" entitled "Community Confinement Procedure Changes" ("the December 20, 2002 Memorandum").  Pursuant to the change effected in the December 20, 2002 Memorandum, pre-release into CCC designations became limited to the last 10 percent of the prison sentence, not to exceed six months ("the 10% Rule").

As applied to the instant petitioner, the net effect of the policy change has enabled  the BOP to defer his pre-release into a CCC from six months prior to his projected release date to approximately two-and-a-half months prior to his projected release date (*i.e.*, ten percent of a twenty-four-month sentence).

## 2.   Application of Change in Law to Facts

To the extent that the petitioner argues that the BOP has incorrectly applied the law in limiting his term in a CCC to two-and-a-half months (instead of six months), that claim lacks merit.   While the Court finds the new 10% policy to be harsh in some respects, it is constrained to conclude that the instant petitioner is subject to the terms and provisions of the BOP's new

policy which restricts CCC placement to the last 10% of a federal inmate's sentence.

Title 18 U.S.C. §3624(c) states, in part, as follows:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months*, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

*Id*. (Emphasis Added)

Nothing in this language requires or mandates the BOP to place any federal prisoner in a CCC for a full six months prior to their 10% date. The language merely *authorizes* the BOP to allow CCC placement up to six months. While PS 7310.04 states that an inmate may be referred to a CCC beyond 180 days, it states that such placement is highly unusual and is only possible with extraordinary justification. The instant petitioner has not established extraordinary justification for a six-month CCC placement.

Although the BOP has the *authority* to place a prisoner in a CCC for more than the final 10% of his sentence, the BOP is not *required* to do so. In *Distefano v. Federal Bureau of Prisons*, 2004 WL 26999, *4 (S.D.N.Y. March 4, 2004), Distefano was sentenced on October 28, 2002, in the Southern District of New York to a term of 21 months and began serving his sentence on March 7, 2003. The district court issued a writ of mandamus under 28 U.S.C. §1651 compelling the Warden of FCI-Otisville to act promptly and in good faith to *consider* Distefano for placement in a CCC consistent with the BOP's policy prior to December 2002. The court qualified that ruling, however, by stating as follows:

"This 'ruling does not *require* the Bureau to grant petitioner's request for [CCC] designation, *but only to give that request full and fair consideration*.' *McCarthy*

6

[*v. Doe* 146 F.3d 118, 122-23 (2d Cir. 1998)] . . . . Because Distefano would become eligible for CCC placement on March 13, 2004 under the prior policy, the BOP is directed to *consider* him for placement by that date."

*Distefano*, 2004 WL 396999, at *6 (Emphasis added).  *See also Gambino v. Gerlinski*, 96 F. Supp.2d 456, 459-60 (M.D. Pa. 2000), *aff'd*, 216 F.3d 1075 (3rd Cir. 2000) (unpublished table opinion), in which Gambino argued that 18 U.S.C. §3624(c) required the BOP to provide him with some amount of time, during the last ten percent of his sentence, in pre-release confinement (*e.g.*, a halfway house or home confinement).

The *Gambino* court concluded that §3624(c) does not create a liberty interest because it "refers to no [mandatory] procedures.  It is instead a broadly worded statute setting forth a general policy to guide the prison system."  *Id.* at 460 (citing *Badea v. Cox*, 931 F.2d 573, 576 (9th Cir.1991)).  The court determined that Gambino had failed to state a claim for relief because he had failed to show that his confinement violated the Constitution or any federal  law.

*Gambino* cited an even earlier case,  *Prows v. Federal Bureau of Prisons*, 981 F.2d 466 (10th Cir.1992), *cert. denied*, 510 U.S. 830, 114 S.Ct. 98, 126 L. Ed.2d 65 (1993), a case decided under the old BOP policy.  In *Prows*, a federal prisoner sought an injunction compelling his placement in a halfway house or CCC on the theory that §3624(c) mandates non-prison placement for federal prisoners prior to their release.  The Tenth Circuit rejected the claim, stating as follows:

> [w]hile there is mandatory (albeit qualified) language employed in the statute, it relates only to the general direction to facilitate the prisoner's post-release adjustment through establishment of some unspecified pre-release conditions. Nothing in §3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period.

*Id*. at 469 (citing *United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir.1991)).[2]

In *Hendershot v. Scibana*, 343 F.Supp.2d 745, 746 (W.D. Wis. November 4, 2004), the district court had originally granted the petitioners' writs of habeas corpus under 28 U.S.C. §2241 and ordered the BOP to consider petitioners for transfer to a halfway house or other transitional program as early as six months before their projected release dates.  On the BOP's motion to amend judgment, the court vacated its decision and dismissed the petitions.  The district court stated:

> Even if petitioners were successful in challenging the bureau's new policy in a new lawsuit, they would not be entitled to halfway house placement for the last six months of their sentences. *The best petitioners could hope for from this court is an order directing respondent to consider petitioners for halfway house placement in the exercise of his discretion.  But even this outcome may not result in the relief petitioners seek.*  In *Richmond* [*v. Scibana*, 387 F.3d 602 (7th Cir. October 19, 2004),  the court noted that the Department of Justice "has decided not to exercise in prisoners' favor whatever dispensing power it possesses.  It has proposed a rule that inmates will be placed in community or home confinement only during the last 10% of their sentences" as an exercise of its discretion under §3621(b).  *Richmond*, 387 F.3d at 605.  *Petitioners should consider the likelihood that a favorable decision will not result in halfway house placement before their 10% dates*.

*Hendershot*, 343 F.Supp.2d at 746.

---

[2]

*Gambino* cited numerous cases which also concluded that §3624 does not require the BOP *to*  provide for placement in a CCC prior to the end of a term of imprisonment:  *Lizarraga-Lopez v. U.S.*, 89 F.Supp.2d 1166 (S.D.Cal.2000) (holding that no relief is available pursuant to §2255 based on alleged violation of §3624(c) because it does not guarantee placement into community confinement for any federal prisoner and noting that Bureau of Prisons has been granted vast discretion to determine appropriate conditions under which prisoner shall serve his or her sentence); *U.S. v. Morales-Morales*, 985 F.Supp. 229, 231 (D.Puerto Rico 1997) (§3624(c) does not confer upon prisoners the right to seek a particular form or place of pre-release custody); *U.S. v. Mizerka*, 1992 WL 176162 (D.Or. July 16, 1992) (no habeas corpus relief based on an alleged violation of §3624(c) because that section does not require the Bureau of Prisons to provide for confinement in a community corrections center prior to the end of the term of imprisonment); *Flisk v. U.S. Bureau of Prisons, et al.*, 1992 WL 80523 (N.D.Ill. April 10, 1992) (no relief available pursuant to §2255 based on alleged violation of §3624(c) because that section is not mandatory); *Lyle vs. Sivley*, 805 F.Supp. 755 (D.Ariz.1992) (habeas corpus relief denied because, *inter alia*, §3624(c) does not create a protected liberty interest).

8

Section 3624(c) and BOP Program Statement 7310.04 vest discretion with prison officials on the issue of determining the amount of time a federal prisoner will serve in a CCC. The language in PS 7310.04, §9(a), entitled "CCC Criteria and Referral Guidelines," relates to recommendations for CCC placements "based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly." *Id*.

The Program Statement then discusses various factors which BOP officials must consider when exercising their discretion as to deciding the length of an inmate's placement in a CCC. These factors include the inmate's institutional behavior; his individual needs; existing community resources; and the length of sentence. *Id*. Specifically, as to the factor relating to length of sentence, PS 7310.04 states that "ordinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced transition needs."

Here, the petitioner was sentenced to a relatively short term: twenty-four months excluding good time credits. The BOP has determined that the petitioner can be released into a CCC in July, 2007, five months prior to the expiration of the twenty-four month sentence. To the extent that the petitioner argues that his computer-processing credentials will expire while he is in custody is not an availing one. He claims that if he is not released to a CCC which will afford him access to cutting-edge computer training he will be irreparably harmed. While the petitioner will no doubt be inconvenienced by having reapply for his computer credentials upon his release, he has not described a situation of irreparable harm.

### 3. No Fifth or Eighth Amendment Violation

The plaintiff is advised that Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. §3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100 (1979).

The general rule is that the Due Process Clause of the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. at 88; *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976). The Constitution does not confer inmates a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." *Hewitt v. Helms*, 459 U.S. 460 at 468, (1983). The Due Process Clause requires only that inmates' conditions of confinement be consistent with their sentence. *Id*. at 468.

In short, well settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison (such as a CCC), security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983); *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976)*; Bolger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.(Tex.) 1995). Accordingly, the instant petitioner simply has no due process right, protected by the Fifth Amendment, to be placed in a CCC more

10

to his liking or to be placed in a CCC earlier than prior to the remaining ten percent of his sentence.

Assessing the facts under the Eighth Amendment would not salvage the claim. In 1995, the Supreme Court developed a rule for analyzing "conditions of confinement" claims which renders a fatal blow to the plaintiff's claim. The Supreme Court determined that for a prisoner, a deprivation of a legally cognizable liberty interest occurs only when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995). Citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), the Supreme Court held in *Sandin* that the Due Process Clause is aimed at protecting no more than "the most basic liberty interests" in prisoners, and that it will not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates. *Sandia v. Conner*, 515 U.S. at 478..

Under the *Sandin* analysis, housing assignments and classification decisions (such as extended placement in disciplinary segregation and transfers to higher security prisons) have been upheld as the "ordinary incidents of prison life." *See Merchant v. Hawk-Sawyer*, 37 Fed. Appx. 143, 145 (6th Cir. (Ky.), May 7, 2002) (not selected for publication in the Federal Reporter) (Merchant's maximum security classification, 21-month confinement in the special housing unit and transfer to a more secure facility were simply the "ordinary incidents of prison life," and did not implicate a protected liberty interest). These decisions were far more restrictive than Petitioner Brock's complaint about being denied updated computer training.

4. Request for Preliminary Injunction [Record No. 3]

11

The Court will briefly discuss the petitioner's request for a preliminary injunction. The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering factor (1) in relation to this case, Petitioner Brock's likelihood of success on the merits is unlikely, given the broad discretion vested in the BOP to decide matters relating to CCC placement and the fact that prisoners have no liberty interest in CCC placement over and above what the statute specifically requires. Additionally, the BOP does not allow prisoners access to computers for valid security reasons. In light of that policy, the petitioner's argument that he cannot retain his computer accreditation while he is in custody fails to establish that he is being denied adequate preparation for re-entry into society. While regrettable, it can only be considered as an unfortunate and frustrating side-effect of a federal felony conviction.

The *Elwood* case, which the petitioner cites, provides him with no authority for his claims. In *Elwood*, the Eighth Circuit noted that while there was an aspect of mandatory compliance placed on the BOP as far as CCC placement, it was more general in nature than specific.

12

 We emphasize, like the First Circuit, that 18 U.S.C. § 3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more.  Under § 3624(c) the BOP must formulate a plan of pre-release conditions.  This plan may include CCC  placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. Likewise, the obligation is qualified by the phrase "to the extent practicable." **Security concerns** or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

*Elwood v. Jeter*, 386 F.3d at 846 (Emphasis Added).

As to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).  Finally, the Court is not convinced that the public interest would be served by interfering with the BOP's decision to release the petitioner into a CCC until July, 2007.

Because Petitioner Brock's claim to a right of an immediate placement into a CCC of his preference are without merit, he cannot demonstrate any likelihood of success on his claims. Therefore, no injunctive relief can be awarded.  The petitioner's request for a preliminary injunction [Record No. 3] will be denied.

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** as follows:

(1)     The "Motion for Preliminary Injunction" [Record No. 3] is **DENIED**.

(2)     This action (06-CV-267-GFVT) is **DISMISSED**, *sua sponte*, with prejudice.

(3 )     Judgment shall be entered contemporaneously with this Memorandum Opinion

13

and Order in favor of the named respondents.

This the 13th day of December, 2006.

Signed By:

_**Gregory F. Van Tatenhove**_

**United States District Judge**